HOBSON, Judge.
The owners of certain real property entered into a building contract with General Building Design, Inc., a general contractor. The appellants, capital stockholders of General Building Design, Inc., executed a document entitled “Guaranty of Completion” which stated:
To eliminate the need of a performance and/or payment bond for the construction contract . . each of us hereby jointly and severally represent, warrant and covenant as follows:
1. We unconditionally guarantee to you the due performance of all of General’s obligations under the above described construction contract. .
Article 9 of the building contract provided:
It is an expressed condition of this contract that . . . Jones agree to personally guarantee the performance of General Building Design, Inc. so that no performance bond will be required.
This action began with the filing of a complaint by a subcontractor against the property owners seeking foreclosure of a mechanic’s lien. Numerous counterclaims, crossclaims and third-party actions were filed, adding as parties the general contractor and numerous subcontractors and mate-rialmen, including appellants, as guarantors. All claims were settled with the exception of appellee’s claim against General Building Design, Inc. and appellants as guarantors.
The trial court entered a final judgment in favor of W. L. Cobb Construction Company, holding that the guarantee of Kendrick Jones, et ah, appellants, was provided in lieu of a statutory payment bond as contemplated by Section 713.23, Florida Statutes (1977). The court stated:
. [I]f a personal guarantee is provided in lieu of the statutory payment bond, the personal guarantee must likewise be construed to afford the full protection contemplated by a Section 713.23 bond, which would inherently and necessarily include the obligations of General Building Designs, Inc. under its subcontract with W. L. Cobb Construction Company. . . .
Appellants ask this court to find that the guarantee in question is, as a matter of law, in the nature of a performance bond rather than a payment bond. Appellants argue that the obligation undertaken by them as guarantors was solely for the benefit of the owners and was never intended to exempt the owners from the provisions of the Florida mechanics’ lien laws. Appellants point out that Cobb’s initial pleading was a suit on a mechanic’s lien for material and labor incorporated in the improvement. Only after this lien was satisfied by prorating the available money to the several lienors did Cobb file the instant claim for the unpaid balance against appellants as guarantors.
We find that the guarantee in question has the effect of a performance bond to indemnify the owners of the real property against liens and thus does not benefit appellee for a breach of contract by General Building Design, Inc.
Section 713.23, Florida Statutes (1977) provides that a payment bond “shall be executed as surety by a surety insurer authorized to do business in Florida . . .” Its purpose is to exempt the property owner from Florida’s mechanics’ lien laws. Statutory requirements for bonds of this type must be strictly followed. In reversing the dismissal of a complaint seeking foreclosure of a mechanic’s lien under a statutory payment bond, the Fourth District Court stated:
Suffice to say, a bond furnished pursuant to Section 713.23, Florida Statutes (1975) must comply with the provisions of that section in order for the benefits afforded thereby to accrue to the owner since preclusion of a claimant’s lien right is no insignificant matter. Hunt Truck Sales and Service, Inc. v. Bonanza Construction, Inc. 353 So.2d 612 (Fla. 4th DCA 1977) at 613.
This court stated in Alpha Electric Supply, Inc. v. F. Feaster, Inc., 358 So.2d 892 (Fla. 2d DCA 1978):
*552 Thus, proof of the existence of a payment bond meeting all of the conditions of Section 713.23, Florida Statutes (1975) is a complete defense to a suit We believe the defense was prematurely raised and should be asserted affirmatively by allegations showing that the payment bond did, in fact, meet all the conditions of Section 713.23. (Emphasis added)
If the owners had intended to exempt themselves from the provisions of Chapter 713, they would have required the general contractor to provide a payment bond. The guarantee in question here does not suffice, on its face, to substitute for a payment bond and the record shows that numerous subcontractors and materialmen did avail themselves of the benefits of Chapter 713.
Although it is not mandatory that an owner obtain a payment bond, if the owner chooses the alternative of a bond, he may not employ one other than as provided for by Section 713.23. Guin & Hunt, Inc. v. Hughes Supply, Inc., 335 So.2d 842 (Fla. 4th DCA 1976). In the instant case, the owners did not choose the alternative of a payment bond. They remained subject to the provisions of Chapter 713. The guarantee provided by the appellants, stockholders of General Building Design, Inc., served to indemnify the property owners against loss arising by reason of a failure of the general contractor to faithfully perform under the building contract.
Looking to the language of the guarantee itself, we find no mention of payment to materialmen. In fact, Article 9 of the building contract expressly states that the guarantors “personally guarantee the performance of General Building Design, Inc. so that no performance bond will be required.” The record reveals no other statements, agreements or intentions which would modify the plain meaning of this phrase. In the body of the written guarantee itself we find the phrase, “We unconditionally guarantee to you the due performance of all of General’s obligations. . . ” This promise runs from the guarantors to the owners and we will not extend the obligation to third-party subcontractors and materialmen.
We recognize that the mere use of labels such as “payment” or “performance” will not assure the substantive consequences of an agreement. However, the agreement in question lends itself to a “performance” interpretation because of 1) the repeated use of the word “performance,” 2) the absence of any mention of duties to subcontractors or materialmen, and 3) the strict statutory requirements for payment bonds. We believe that the owners chose to avoid the use of bonds altogether and instead employed the personal guarantee of Kendrick Jones, et al., to achieve the desired results, /. e., the faithful performance of the building contract by General Building Design, Inc. to the owners.
The final judgment entered in this cause against appellants, Kendrick A. Jones, et al., is hereby reversed.
GRIMES, C. J., and SCHEB, J., concur.